IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

ROBERT EDWARD LEE,

        Plaintiff,

v.

JEREMIAH JONES, et al.,

        Defendants.

No. CV 05-789-MO

OPINION AND ORDER
re: Defendants' Motion to Dismiss

MOSMAN, J.,

In this 42 U.S.C. § 1983 action, Plaintiff Robert Edward Lee challenges two of his conditions of parole. Mr. Lee is currently on parole and he is not raising his challenges in the context of parole revocation proceedings. Defendants Jeremiah Jones, Mr. Lee's parole officer, and Sue Elving, Mr. Jones' supervisor, moved to dismiss this action under FRCP 12(b)(6) arguing that *Heck v. Humphrey*, 512 U.S. 477 (1994) and its progeny require that Mr. Lee raise his challenges in the context of habeas corpus. After reviewing this motion, I find that neither *Heck*, nor any other controlling authority, requires such a conclusion under the circumstances presented in this case. Thus, defendants' motion (#16) is denied.

### Background

On October 23, 2003, Mr. Lee pleaded guilty to the offense of failure to report as a sex offender and was sentenced to eight months in the Oregon Department of Corrections to be followed by two years of post prison supervision. (Def. Ex. 1, at 1). Plaintiff's prison release date was April 7, 2004, and his parole expiration date is November 10, 2006. The relevant

conditions of his parole are that he: (1) "[c]onsent to sharing of assessment and treatment information," and (2) "[p]ermit the supervising officer to visit [him] or [his] residence or work site, and to conduct a walk-through of the common areas and of the rooms in the residence occupied by [him] or under [his] control . . . ."

Mr. Lee filed his § 1983 complaint *pro se* in June 2005 alleging the following facts: (1) that he sent the defendants a letter reserving his "God given, unalienable (sovereign) Rights," which they did not refute; (2) that Mr. Jones knocked on his residence door without notice or a warrant, and after Mr. Lee opened the door, Mr. Jones entered without being invited and performed a visual inspection; and (3) that at the same time Mr. Jones inspected his residence, Mr. Jones also required Mr. Lee to sign a "release of information" form and refused to give Mr. Lee a copy of the form. Mr. Lee argues he initially refused to sign the form, but after Mr. Jones threatened to have him arrested, he signed "under duress." He asserts that he initially refused to sign the form because Mr. Jones came to his residence on the Sabbath, which he believes is a day reserved for "Almighty God only," though he did not explain this to Mr. Jones at the time.

Mr. Lee alleges these events constitute violations of his "individually held, God given, unalienable (sovereign) Rights" as well as his rights under the First, Fourth, Fifth, and Fourteenth Amendments. Mr. Lee also alleges he was subjected to a Bill of Attainder in violation of Article 1, Section 10 of the Constitution because defendants have subjected him to improper jurisdiction. (Compl. at 13, ¶ 7). The claim against Ms. Elving is based on her failure to properly train or supervise Mr. Jones. Mr. Lee seeks declaratory and injunctive relief and money damages.

## Discussion

The initial dividing line between proper habeas corpus and § 1983 cases was defined by the Supreme Court in *Preiser v. Rodriguez*, 411 U.S. 475 (1973). There the Court held that where a prisoner's claim goes to the "heart of habeas corpus" and challenges the "the fact or duration of . . . confinement," habeas is the sole remedy available. *Id.* at 498. However, § 1983 provides a remedy for a prisoner challenging the constitutionality of the conditions of his confinement. *Id.* at 499.

The Court revisited this issue in *Heck v. Humphrey*. In *Heck*, the prisoner sued various state officials under § 1983 for violating his constitutional rights by conducting an unlawful investigation before his trial and destroying evidence. 512 U.S. at 478-79. The prisoner sought monetary damages, but did not seek injunctive relief or release from prison. The Court held that in spite of the specific relief requested, "the hoary principle that civil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments applies to § 1983 damages actions that necessarily require the plaintiff to prove the unlawfulness of his conviction or confinement." *Id.* at 486. Thus, before a prisoner can bring a claim for monetary damages under § 1983 based on an "allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid," he must establish that the conviction or sentence was invalidated in a separate proceeding. *Id.* at 486-87.

The Supreme Court recently summarized its holdings on this issue stating: "These cases, taken together, indicate that a state prisoner's § 1983 action is barred (absent prior invalidation)-no matter the relief sought (damages or equitable relief), no matter the target of the

prisoner's suit (state conduct leading to conviction or internal prison proceedings)-*if* success in that action would necessarily demonstrate the invalidity of confinement or its duration." *Wilkinson v. Dotson*, __ U.S. __, 125 S. Ct. 1242, 1248 (2005).

Even though it is clear challenges falling within the "core of habeas" are exclusively within habeas jurisdiction, habeas and § 1983 jurisdiction are not always mutually exclusive. Rather, under certain circumstances, jurisdiction could properly lie under either statute. *Preiser*, 411 U.S. at 499-500; *Docken v. Chase*, 393 F.3d 1024, 1027 (9th Cir. 2004) ("*Presier* suggested that there are some circumstances concerning prison conditions in which *both* habeas corpus and § 1983 suits may lie-that is, that the two remedies are not always mutually exclusive so long as the 'core' or 'heart' of habeas corpus is not implicated."). For example, habeas is not the exclusive remedy for challenges that *may* affect the fact or duration of confinement, either in prison or on parole, as opposed to those challenges that *necessarily* affect confinement. *Wilkinson*, 125 S. Ct. at 1248 (holding that habeas was not exclusive remedy where prisoners challenged the procedures used in denying them release on parole because "neither prisoner's claim would necessarily spell speedier release, [and thus,] neither lies at 'the core of habeas corpus'" because the only relief they would get if successful were new parole hearings) (citing *Preiser*, 411 U.S. at 489); *cf. Docken*, 393 F.3d at 1031 (holding that because the challenge to parole review procedures "*could* potentially affect the duration of . . . confinement," such challenge was properly raised under habeas, while at the same time recognizing habeas may not be the exclusive remedy under these circumstances).

Neither the Supreme Court nor the Ninth Circuit has specifically addressed whether a parolee challenging the conditions of his parole fits within the core of habeas corpus. The courts

that have tend to distinguish between situations where (1) the parolee challenges the validity of his parole conditions in the context of his parole being revoked for violation of the challenged conditions, and (2) the parolee preemptively challenges the conditions of his parole, without any revocation.

In the first context, courts have found, consistent with *Heck*, that challenges to parole conditions in the context of revocation necessarily imply the invalidity of the parole revocation decision or the plaintiff's continued imprisonment, and therefore the revocation decision must be found invalid in separate proceedings before a § 1983 action is proper. *See, e.g., White v. Gittens*, 121 F.3d 803, 807 (1st Cir. 1997); *Crow v. Penry*, 102 F.3d 1086, 1087 (10th Cir. 1996); *Littles v. Bd. of Pardons & Paroles Div.*, 68 F.3d 122, 123 (5th Cir. 1995); *Zupan v. Brown*, 5 F. Supp. 2d 792, 795 (N.D. Cal. 1998). On the other hand, in cases where the parolee preemptively challenges his parole conditions, as is the case here, courts are less consistent. For example, in *Moreno v. California*, 25 F. Supp. 2d 1060 (N.D. Cal. 1998), the parolee preemptively challenged three conditions of his parole– conditions prohibiting (1) any contact with minors (including his own son); (2) working in the family catering or property management businesses; and (3) driving the family's business or personal vans. *Id.* at 1061. The court analyzed whether the conditions were part of the parolee's sentence within the meaning of *Heck*, and it concluded that because violations of the conditions of parole result in further incarceration, "it is logical that parole conditions be considered part of the sentence." *Id.* at 1063. The court then held that a challenge to these conditions "is not cognizable under §1983 unless and until Plaintiffs demonstrate that the conditions have been invalidated." *Id.*

Similarly, in *Drollinger v. Milligan*, 552 F.2d 1220 (7th Cir. 1977), the Seventh Circuit

considered whether a probationer seeking injunctive relief relating to certain of her probation conditions stated a proper claim under § 1983. The probationer sought declaratory relief that some of her probation conditions were unconstitutional and an injunction against their enforcement. *Id.* at 1222-23. The probationer argued her claim was properly raised under § 1983 because she was challenging the *conditions*, not the *duration*, of her probation. *Id.* at 1224. The court rejected this argument reasoning:

> Because probation is by its nature less confining than incarceration, the distinction between the fact of confinement and the conditions thereof is necessarily blurred. The elimination or substitution, for example, of one of the conditions of . . . probation would free [the probationer] substantially from her confinement; figuratively speaking, one of the "bars" would be removed from her cell. The release from such custody, even if only partial, is the traditional function of the writ of habeas corpus.

*Id.* at 1225 (citing *Preiser*, 411 U.S. at 484). Significant to the court's decision, was its view that probation conditions are part of a probationer's sentence, and that by attacking the conditions, the probationer "is seeking release from at least part of [her] sentence." *Id.*

On the other hand, the Southern District of Florida has held that habeas is not the exclusive remedy in cases where the parolee preemptively challenges the conditions of his parole. *Yahweh v. U.S. Parole Comm'n*, 158 F. Supp. 2d 1332 (S.D. Fla. 2001). In *Yahweh*, the soon to be paroled prisoner brought an action challenging his parole conditions and seeking relief outside the habeas context, and the defendants moved to dismiss the action on the ground that habeas corpus is the exclusive means to challenge parole conditions. *Id.* at 1337. However, the court reasoned that prison conditions and parole conditions were intrinsically similar, and that because challenges to prison conditions such as what an inmate must wear, the length of an inmate's hair, and what an inmate is permitted to read may be challenged through means other

than habeas corpus, the same must be true for challenges to parole conditions. *Id.* at 1339. Distinguishing the Seventh Circuit's concern about removing the "bars" from a parolee's confinement, the court explained:

> [S]tringent parole conditions are *not*, in essence, the figurative "bars" that confine the parolee. Rather, it is the underlying conviction and sentence that confine the parolee, that make him a ward of the state rather than a free man. The parolee's ultimate transition to freedom is defined by the expiration of his sentence, not by the removal of a parole condition.

*Id.* at 1339.

None of these cases are binding on this court, and after considering the various decisions, I find the reasoning of the *Yahweh* court persuasive. To begin with, the premise of the other opinions is that parole conditions are part of the parolee's *sentence* for purposes of the *Preiser/Heck* analysis. But, this premise has been called into doubt by the Supreme Court's recent opinion in the *Wilkinson* case. There, the state argued that the prisoners' § 1983 actions challenging the procedures used in denying them parole were improper because "parole proceedings are part of the prisoners' 'sentences' - indeed, an aspect of the 'sentences' that the § 1983 claims, if successful, w[ould] invalidate." 125 S. Ct. at 1249. The Court rejected this argument explaining, "*Heck* uses the word 'sentence' to refer not to prison procedures, but to substantive determinations as to the length of confinement." *Id.* (citing *Muhammad v. Close*, 540 U.S. 749, 751 n.1 ("[T]he incarceration that matters under *Heck* is the incarceration ordered by the original judgment of conviction")). The opinion further states, "this Court has repeatedly permitted prisoners to bring § 1983 actions challenging the conditions of their confinement- conditions that, were [the state] right, might be considered part of the 'sentence.'" *Id.* Applying this same reasoning to the context at issue in this case, it seems clear that parole conditions–as

opposed to the fact of parole itself–are not properly considered part of the parolee's *sentence*.

Second, I agree with the *Yahweh* court that there is no meaningful way to distinguish prison conditions that are commonly examined in the context of § 1983 and parole conditions. Neither go to the *fact or duration* of confinement such that they fit within the heart of habeas corpus as defined by the Supreme Court. Here, Mr. Lee challenges the constitutional validity of the parole conditions that he allow warrantless searches of his residence and that he consent to the release of information. These challenges do not imply the invalidity of his underlying sentence, and they do not seek to change the fact or length of his parole. They simply relate to the conditions under which he is released from prison. As such, habeas corpus is not his exclusive remedy and defendants' motion to dismiss on this basis is DENIED.

IT IS SO ORDERED.

DATED this ___9th___ day of January, 2006.

/s/ Michael W. Mosman
MICHAEL W. MOSMAN
United States District Judge